**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Jovan Smith a/k/a Jovan Massey Smith,<br><br>Plaintiff,<br><br>-v-<br><br>New York State, *et al.*,<br><br>Defendants. | 2:26-cv-5430<br>(NJC)(LGD) |
| Jovan Smith a/k/a Jovan Massey Smith,<br><br>Plaintiff,<br><br>-v-<br><br>Errol D. Toulon, Jr., *et al.,*<br><br>Defendants. | 2:26-cv-5435<br>(NJC)(LGD) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Since June 3, 2026, Plaintiff Jovan Massey Smith has filed fifteen pro se complaints before this Court, along with a motion to proceed *in forma pauperis* ("IFP") in each case, while incarcerated at the Suffolk County Correctional Facility ("SCCF"). These cases are docketed as follows:

- 2:26-cv-03331 ("Smith I") (Compl., ECF No. 1, IFP Mot., ECF No. 2 in each case);
- 2:26-cv-03360 ("Smith II");
- 2:26-cv-03455 ("Smith III");
- 2:26-cv-03764 ("Smith IV");
- 2:26-cv-04248 ("Smith V");
- 2:26-cv-04448 ("Smith VI");
- 2:26-cv-04837 ("Smith VII");
- 2:26-cv-4839 ("Smith VIII");
- 2:26-cv-4955 ("Smith IX");

- 2:26-cv-5229 ("Smith X");
- 2:26-cv-5418 ("Smith XI");
- 2:26-cv-5430 ("Smith XII");
- 2:26-cv-5435 ("Smith XIII");
- 2:26-cv-5449 ("Smith XIV"); and
- 2:26-cv-5499 ("Smith XV").

This Memorandum and Order addresses Smith XII and Smith XIII. The remaining cases will be addressed by separate order.

For the reasons that follow, the Court grants the IFP motions filed along with the Smith XII Complaint and Smith XIII Complaint (together, the "Complaints"). Upon screening these pleadings in accordance with the requirements of 28 U.S.C. §§ 1915, 1915A, the Complaints are dismissed in their entirety for failing to state a claim for relief pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1).

**BACKGROUND**

Prior to Smith's present detention at the SCCF, he was incarcerated since 2023 first at the Green Haven Correctional Facility and then at the Five Points Correctional Facility ("FPCF") following conviction for criminal sale of a firearm in the third degree. (*See* Smith V, ECF No. 1-2 at 10 (Mar. 6, 2025 Hr'g Tr).) While detained at the FPCF, on February 4, 2025, Smith was admitted to the Central New York Psychiatric Center where he was treated for "acute psychiatric illness" and was diagnosed first with schizoaffective disorder, bipolar type, and then with Bipolar I Disorder. (*Id*. at 5–7, 19.) On March 6, 2025, a hearing was held at the Supreme Court for the State of New York, Oneida County, on the petition filed by the Executive Director of Central New York Psychiatric Center, Danielle Dill, to commit Smith, "an allegedly mentally ill inmate to the State Hospital for the Mentally Ill in the State Office of Mental Health." (*Id*. at 1, 3.) Smith was represented by counsel and testified at that proceeding. (*Id*. at 20–24.)

Since early June 2026, Smith has filed fifteen IFP complaints alleging largely the same

facts and claims against many of the same defendants. Smith challenges the fact of his detention and the conditions thereof and alleges widespread collusion among federal, state, and local officials and law enforcement officers. In the various complaints filed in these cases, Smith brings claims pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging the deprivation of his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution and claims pursuant to Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"). The complaints also allege state law tort claims, including negligence and defamation.

On August 28, 2026, Smith filed the twelfth and thirteenth Complaints, which are in Smith XII and Smith XIII. (Smith XII, ECF No. 1, and Smith XIII, ECF No. 1.) Both Complaints purport to bring RICO claims challenging Smith's detention and the conditions at the SCCF. (*Id.*) The Court summarizes each of these Complaints[1] below.

## I. Smith XII

On August 28, 2026, Smith filed a three-page complaint and an attachment[2] against twenty-four defendants together with an IFP motion in Smith XII. (Smith XII Compl., ECF No. 1; IFP Mot., ECF No. 2.) The defendants are:

- the State of New York ("New York State"),
- New York State Dept. of Mental Health, a/k/a New York State Office of Mental Health ("NYS OMH"),

---

1 Excerpts from the Complaints have been reproduced here exactly as they appear in the originals. Errors in spelling, punctuation, and grammar have not been corrected or noted.

2 Annexed to both Complaints is a copy of a letter dated July 16, 2026 from plaintiff's mother, a licensed clinical social worker, who reports that she has not blocked her telephone numbers so plaintiff should be able to call her and that plaintiff "understands the charges" and "can assist with defense." (Smith XII, Smith XIII, ECF No. 1-2 in each case.)

- Commissioner of the New York Office of Mental Health Ann Marie T. Sullivan ("Commissioner Sullivan"),
- New York State Governor Kathy Hochul ("Governor Hochul"),
- Pilgrim State Psychiatric Hospital ("Pilgrim State"),
- Director of Pilgrim State Psychiatric Center,
- Danielle Hamilton ("Director Hamilton"),
- Suffolk County Sheriff's Office ("SCSO"),
- Warden of SCCF Michael Franchi ("Warden Franchi"),
- Suffolk County Sheriff Errol D. Toulon, Jr. ("Sheriff Toulon"),
- Suffolk County Executive Edward D. Romaine ("Suffolk County Exec. Romaine"),
- Mental Health Director of SCCF Jane Doe a/k/a as Dr. Desantis ("Desantis"),
- Social Worker at SCCF #848 John Doe a/k/a Claudius ("Claudius"),
- SCSO Grievance Coordinator Nancy Tyson ("Tyson"),
- SCSO Grievance Investigator John Doe a/k/a Turpin ("Turpin"),
- Commissioner of Correction John Doe Badge #1411 ("Doe #1411"),
- SCSO Internal Affairs Investigator Lohman ("Lohman"),
- Jane Doe Badge # 542 ("Doe #542"),
- SCSO Internal Affairs Investigator Guerrero ("Guerrero"),
- SCSO Internal Affairs Investigator Supervisor John Doe ("IAIS Doe"),
- SCCF,
- SCSO Grievance Sgt. #5250 John Doe ("Sgt. Doe #5250"),
- New York State Attorney General Letitia James ("NYS AG James"), and
- SCSO Internal Affairs Investigator Williams ("Williams" and collectively, "Smith

XII Defendants").

(Smith XII, ECF No. 1 at 1–2.) Each of the Smith XII Defendants are sued both in their official and individual capacities. (Compl., ECF No. 1 at 1.)

The Smith XII Complaint is brought pursuant to RICO, and the allegations are largely a compilation of conclusory statements without supporting factual allegations. In its entirety, the Smith XII Complaint alleges the following:

> I. Basis for Jurisdiction
> (A) Suit brought under 18 USCA 1964 and 18 USCA 1961 against local and state
>
> II. CLAIM: The applicable defendants did not grant plaintiff equal treatment or due process for solitary isolation/confinement in 4SWH. The defendants violated 18 USCA § 1961, 18 USCA § 1964 systematically in order to violate sections 1546, 1503, 1513, 1952, and sections 1581-1592 of 18 USCA § 1961 in retaliations against the plaintiff(s) for his complaints, and showed micro aggression, macro aggression, micro oppression, macro oppression against plaintiff in order to keep the plaintiff in 23 hour confinement to a cell in extreme solitary isolation, and falsified documentation to do so; the defendants tortured the plaintiff in perpetuity, ignored the plaintiff's mother, who wrote and notarized a statement, and instead the defendants showed inhumane treatment to the plaintiff in keeping him in said 23 hr solitary isolation on 4 South West H5 and even while the entire time the plaintiff's blood clot conditioned worsened as a direct result, ignored the plaintiff's complaints of this and moved all other incarcerated individuals to less confined cells after 2 weeks, including John Sanders [ . . .] on 8/22/26, although the plaintiff had been complaining for months about the cruel and unusual punishment, showing depraved indifferences to unequal treatment. The defendants forced plaintiff to undress and shower naked in a shower with no shower curtain daily, made sexual comments, exposed their penises to the plaintiff, sexually propositioned the plaintiff, called the plaintiff derogatory names, racist names, tampered with the plaintiff's food, obstructed and withheld his mail, covered up cameras on 4SWH and 4SE, and subjected plaintiff in extreme isolation where the abuse could take place in perpetuity with no witnesses. The defendants falsified documentation in perpetuity against the plaintiff, ignored the plaintiff, denied the plaintiff family input, and weaponized their system processes and mechanisms against the plaintiff in attempts to collude, to undermine, to discredit plaintiff(s), and ignored plaintiff(s) complaints of torture and the said treatment can cause his

> death. The defendants never told plaintiff when he was being written up in the said falsified documentation. On Saturday 8/22/26 Claudius 848 told John Sanders he was going to tell Suffolk County Sheriff's Office to move him and an hour later he was moved. The plaintiff was not and believes it to be micro aggression and micro oppression. The defendants ignored all of plaintiff's complaints in perpetuity, forcing this complaint. The defendants actions are so systematic, repetitive, and depraved, so pervasive, they constitute as official policies of all of the defendants.

(*Id*. at 2–3.) The Smith XII Complaint seeks to recover a damages award in the sum $100 billion dollars as well as: (1) a "preliminary injunction against New York State Office of Mental Health licensed proffessionals [sic] complicity to 23 hour solitary confinement for extended periods of time, end plaintiff's solitary confinement now!"; (2) a "preliminary injunction against lack of due process of defendants utilizing NYSOMH in Suffolk County to keep plaintiff(s) in 23 hour solitary confinement"; (3) an order to "annul and void all documentation utilized by NYSOMH licensed employees and [professionals] and Suffolk County Correctional Facility due to unequal rights, lack of due process, and corruption which causes depraved indifferences to continued treatment inhumane treatment of plaintiff"; (4) a "preliminary ruling compelling defendants to turn over all documentation hidden by defendants from the plaintiff(s), of any and all kinds"; and (5) an "end [of] plaintiff[']s 23 hour confinement to a cell using a preliminary injunction, as it aggravates blood clots due to lack of movement." (*Id.* at 3.)

### III. Smith XIII

The six-page Smith XIII Complaint was also filed on August 28, 2016—the same day as the Smith XII Complaint. The Smith XIII Complaint purports to bring RICO claims against fifty-two defendants, many of whom are also named as defendants in Smith XII, and was filed together with an IFP motion. (Smith XIII Compl., ECF No. 1; IFP Mot., ECF No. 2.) The Smith XIII Defendants are:

- Toulon,
- Suffolk County,
- Desantis,
- SCSO,
- New York State,
- SCSO Internal Affairs ("SCSO IA"),
- Central New York Psychiatric Center ("CNYPC"),
- Danielle Dill ("CNYPC Director Dill"),
- Nicholas Adamos ("Adamos"),
- Williams,
- Albert DiGiacomo ("DiGiacomo"),
- Lohman,
- NY AG James,
- Guerrero,
- Sgt. Salvago,
- Warden Franchi,
- Sgt. Doe #5250,
- Tyson,
- Daniel F. Martuscello III ("NYSDOCCS Commissioner Martuscello"),
- Turpin,
- Northwell Health,
- Suffolk County Correctional Facility (Yaphank) ("SCCF Yaphank"),
- Suffolk County Correctional Facility (Riverhead) ("SCCF Riverhead"),

- Romaine,
- Suffolk County Assigned Council Defenders (“SC ACD”),
- Pilgrim State,
- New York State Commission of Correction (“NYS CC”),
- John Doe Nurse # 1,
- Jane Doe Nurse # 2,
- Jane Doe Nurse # 3,
- John Doe physician,
- Jane Doe physician provider/badge #950 (“Dr. Doe #950”),
- Steven Pilewski (“Judge Pilewski”),
- New York State Commission of Correction Citizen’s Policy and Complaint Review Council (“NYS CCCPCRC”),
- Commissioner Sullivan,
- Suffolk County Dept. of Health Services (“SCDHS”),
- Peconic Bay Medical Center (“PBMC”),
- Daniel A. Russo (“Russo”),
- Toni Marie Angeli (“Angeli”),
- South Shore University Hospital,
- Stephanie McCall (“McCall”),
- New York State Unified Court System (“NYS UCS”),
- Tierney,
- Stony Brook University Hospital (“SBUH”),
- Suffolk County District Attorney’s Office (“SCDAO”),

- Kevin Catalina (“Catalina”),
- Suffolk County Police Dep’t. (“SCPD”),
- NYS OMH,
- Claudius,
- Kirby Forensic Psychiatric Center (“Kirby FPC”),
- Director of Kirby Brian Belfri (“Director Belfri”), and
- Commissioner of Suffolk County Department of Health Services Gregson H. Pigott (“Pigott”).

(Smith XIII Comp., ECF No. 1 at 1-3.) The Smith XIII Complaint, like the Smith XII Complaint, consists largely of conclusory statements. In its entirety, the Smith XIII Complaint alleges:

> II. Jurisdiction
> A) Local & state officials 18 USCA 1964 claim
> B) NOT A BIVENS
>
> The defendants utilized documentation to further a conspiracy in perpetuity. The defendants, all of the defendants, ignored the plaintiff’s complaints, discriminated against the plaintiff, due to him being in custody, and showed depraved indifference to his actual injuries, not documenting them initially, not rendering care and/or proper treatment resulting in his injuries being not properly documented, causing them to worsen rapidly and almost resulting in the plaintiff’s death. The defendants weaponized the New York State Office of Mental Health in order to discredit the plaintiff in perpetuity, causing defamation, cruel & unusual punishment, and further cause injuries, emotional distress, and more. The defendants retaliated against the plaintiff’s complaints, stopped the plaintiff’s physical therapy numerous times, (including currently), do not bring plaintiff’s life saving medication on time (as noted and recommended), systematically causing worsening condition of blood clots as documented, refuse to put plaintiff in medical housing, as documented, despite medical condition, keeps plaintiff in solitary confinement 23 hr a day locked in which is seriously unsuitable for his medical injuries, making unlimited excuses legitimizing all of the above and below mentioned complaints/conditions/treatment/abuses in grievance complaint findings and false information reports which enables it to continue perpetually, knowing that the combination of all of the above and below mentioned

actions/inactions/treatment/abuses/conditions are causing the plaintiff/can cause the plaintiff additional injuries, witnessed by multiple nurses Jane Doe provider #682, and Jane Doe provider #1134, who witnessed the defamation further and prolonged pain/physical pain/emotional pain/suffering injuries and more. The numerous complaints on record reveal deliberate abdication of responsibility, depraved indifferences, and willful corruption by all defendants and is directly responsible for plaintiff's medication still arriving late (hours late) on 8/4/26, 8/6/26, and in perpetuity, even when the plaintiff alerted outside medical proffesionals, who made additional recommendations. The plaintiff's grievance complaints and complaints and sick call complaints have stopped being answered by the defendants, causing the plaintiff to seriously fear for his safety and life, as his medical sick calls have been ignored and thrown away since plaintiff got out of the hospital after almost dying of his injuries due to the defendants actions in February 2026, and numerous grievance complaints have similarly gone missing and never logged or answered since February 2026, most notably since May 2026, where only about 2 grievances have been answered since, out of 20 plus grievance complaints. The defendants have since <u>not</u> answered a grievance complaint which the plaintiff numbers and documents himself to keep track of due to his experiences with past corruptions of the defendants. The paper trail of the defendants reveal the truth, the actual truth, which correlates to the worsening of the plaintiff's injuries, medical attention, defamation the responses to the complaints and the perpetual systematic and obviously malicious actions, inactions, reoccurrences, and instances of overwhelming cruel and unusual punishment. The defendants and New York State Office of Mental Health licensed "mental health proffessionals" knowingly enables, perpetrated, supported, aided, and abetted these actions, inactions, and abuses by perpetuating defamations, did not report the below & the above cruel and unusual punishment, and has become comfortable being weaponized, at the expense of federal taxpayer dollars local federal and state funds/subsidies, and have shown depraved indifference to the plaintiff's conditions. The defendants collude to continue these abuses, and cover up the plaintiff's injuries, conditions, abuse and treatment, and attempts to silence the plaintiff in retaliation for his complaints via defamation, violations of federal constitutional rights, and violate 18 USCA § 1964 RICO Act, 18 USCA § 1961 as described herein this complaint:

Concerning:
section 1503: relating to obstruction of justice
section 1510: relating to obstruction of criminal investigations
section 1511: relating to obstruction of local and state law enforcement
section 1512: relating to tampering with a witness, victim, or informant
section 1513: relating to retaliating against a witness, victim, or informant
section 1546: relating to fraud, and misuse of visas, permits, and other documents
section 1581: relating to peonage, slavery, and trafficking in persons
section 1957: relating to engaging in monetary transactions in property derived from specified unlawful activity

> section 1831 & 1832: relating to economic espionage and theft of trade secrets
> section 1951: relating to interference with commerce, robbery, extortion
> section 1952: relating to racketeering
>
> The defendants utilized documentation to further the collusion/conspiracy. The defendants all "covered" for each other, and do so in perpetuity against all missing statements, rules & guidelines. The documented injuries, paper trail of the plaintiff and the responses to the plaintiff by the defendants lay bare the obvious RICO Act violations, corruptions, and depraved indifferences linking the defendants together in systematic perpetual coverups of defamed malpractices, injuries, denial of proper medical treatment, inhumane treatment, abuse, retaliations of plaintiff utilizing his First Constitutional Amendment, numerous Constitutional torts whether intentional or unintentional depraved indifferences of those Constitutional torts including but not limited to deprivations of the following rights:
>
> Rights Against Search & Seizure
> Excessive Bail
> Freedom of Speech
> Due Process
> Cruel and Unusual Punishment
> Speedy Trial
> Medical negligence/malpractice
> Attorney misconduct
> Professional misconduct
> Malfeasance
> Perjury
>
> The defendants asserts this is getting out of hand forcing this filing of this complaint. The defendants weild power, immense public support, nearly unlimited resources, and give themselves the appearance of legitimacy to those ignorant of law and those more the wiser. The plaintiff has never been accused of spitting on an officer prior to complaints in 2025.

(*Id*. at 3-5.)

For relief, Plaintiff seeks to recover $62 trillion dollars in damages as well as, among other things, a public apology from the Smith XIII Defendants, unspecified "reform," a "preliminary injunction against all judicial rulings made by Judge Steven Pilewski, and all judges

in NYS, Suffolk County, and more including Charles Merrill,"[3] and a "preliminary injunction against any and all impending proceedings and full disclosure of all said proceedings." (*Id.* at 5.)

**LEGAL STANDARDS**

The Second Circuit has established a two-step procedure by which the district court first considers whether a plaintiff qualifies for IFP status, and then considers the merits of the complaint under 28 U.S.C. § 1915. *See Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) (*per curiam*) ("If the plaintiff demonstrates poverty, he should be permitted to file his complaint *in forma pauperis*. Then the court may properly consider dismissing the complaint as frivolous.").

**I. *In Forma Pauperis***

Upon review of the IFP motions in Smith XII and Smith XIII, the Court finds that Smith is qualified by his reported financial status to commence these actions without the prepayment of the filing fees. Therefore, the applications to proceed IFP (IFP Mot., ECF No. 2 in each case) are granted.[4]

**II. Sufficiency of the Pleadings**

A district court must dismiss a complaint filed by a plaintiff proceeding in forma pauperis if the action is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). The court "shall" dismiss the action as soon as it makes such a determination. *Id.* At the pleading stage, the court must assume the truth of "all well-pleaded,

[3] Of note, Merrill is not named as a defendant and, as such, relief as against him is unavailable.

[4] Incarcerated plaintiffs are not exempt from paying the full filing fee even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010), *aff'd,* 569 U.S. 108 (2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009)).

This Court is required to construe pleadings "filed by *pro se* litigants liberally and interpret them to raise the strongest arguments that they suggest." *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023) (quotation marks omitted). "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Nevertheless, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." *Id.* at 678–79 (citation omitted). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint at least once. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citations omitted). If, however, amendment of the complaint would not cure the substantive defects of the claim, leave to amend should be denied. *Id.*

## DISCUSSION

### I. Rule 8 of the Federal Rules of Civil Procedure

Rule 8 of the Federal Rules of Civil Procedure provides, in relevant part, that a complaint "must contain . . . a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief," and provides that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(1)–(2), (d)(1). Essentially, Rule 8 ensures that a complaint provides a defendant with sufficient notice of the claims against it. *See id*. "When a complaint fails to comply with [the Rule 8] requirements, the district court has the power, on motion or *sua sponte*, to dismiss the complaint or to strike such parts as are redundant or immaterial." *Celli v. Cole*, 699 F. App'x 88, 89 (2d Cir. 2017) (summary order) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).

Although Smith seeks to impose liability on some seventy-six defendants through the Complaints in Smith XII and Smith XIII, the allegations in both complaints, even liberally construed, are so insufficient that neither pleading states a plausible claim against any of the named defendants, thereby failing to meet even the minimal requirements of Rule 8. (*See* Smith XII Compl, ECF No. 1; Smith XIII Compl., ECF No. 1.) Indeed, many of the defendants in each action are not even mentioned in the body of the Complaint for the action. (*Id*.) Rather, the Complaints refer generally to "defendants," making it impossible to link the challenged conduct with a particular defendant. (*Id*.)

Rule 8 "does not demand that a complaint be a model of clarity or exhaustively present the facts alleged," but it does require, "at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order) (citation and quotation marks omitted); *see also Perez v. United States Dist. Ct. S. Dist. of New York*, No. 26-cv-3907, 2026

WL 1661975, at *3 (S.D.N.Y. June 9, 2026) (finding that a *pro se* complaint did not comport with Rule 8's requirements and dismissing it for failure to state a claim on which relief may be granted) (citing 28 U.S.C. § 1915(e)(2)(B)(ii)). Notwithstanding the latitude afforded to them, pro se litigants are "not excuse[d] . . . from complying with the Federal Rules of Civil Procedure." *Gunter v. Carrion*, No. 09-cv-281, 2009 WL 10709657, at *1 (E.D.N.Y. Oct. 20, 2009) (alterations omitted); *see also Carl v. City of Yonkers*, No. 04-cv-7031, 2008 WL 5272722, at *5 (S.D.N.Y. Dec. 18, 2008) ("[T]he cases are legion that pro se status does not excuse a failure to follow clearly-enacted rules of court." (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

Thus, the Complaints are dismissed without prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1). *Mendes Da Costa v. Marcucilli*, 675 F. App'x 15, 17 (2d Cir. 2017) (summary order) (affirming *sua sponte* dismissal pursuant to Rule 8 because "it is virtually impossible to link the various defendants to [plaintiff's] alleged injuries").

## II. RICO

The civil RICO statute creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [S]ection 1962" of that statute." 18 U.S.C. § 1964(c). Section 1962 makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). A pattern of racketeering activity is defined to include a variety of criminal offenses, such as wire fraud, mail fraud, commercial bribery, bank fraud, and money laundering. 18 U.S.C. § 1961(1).

To state a civil RICO claim, a plaintiff must plead: (1) a violation of Section 1962; (2) an "injury to the plaintiff's business or property"; and (3) "causation of the injury by the defendant's violation." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283 (2d Cir. 2006). Specifically, Section 1962 prohibits: (1) investing income derived from a "pattern of racketeering activity" into an enterprise that affects interstate or foreign commerce; (2) using a "pattern of racketeering activity" to acquire interest in or control of an enterprise; (3) using a "pattern of racketeering activity" to conduct or participate in the activities of an enterprise; and (4) conspiring to perform any of the aforementioned activities. 18 U.S.C. § 1962. All RICO claims require a showing that *each* defendant was engaged in a "*pattern of racketeering activity*." *See Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (emphasis added). A "pattern of racketeering activity" requires "at least two acts of racketeering activity . . . within ten years after . . . the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5); *see also City of New York v. LaserShip, Inc.*, 33 F. Supp. 3d 303, 310 (S.D.N.Y. 2014); *LoCurto v. NYU Langone Lutheran Hosp.*, 758 F. Supp. 3d 31, 37 (E.D.N.Y. 2024) ("Plaintiff's RICO claim misses the mark by many miles because he fails to allege a critical element of the criminal RICO violation—a pattern of 'racketeering activity.'"). "Racketeering activity" is an act or threat involving one of the serious crimes listed in the statute. *See* 18 U.S.C. § 1961(1). The so-called predicate acts include murder, kidnapping, bribery, extortion, mail fraud, obstruction of justice or law enforcement, among other enumerated crimes. *See* 18 U.S.C. § 1961(1)(A) and (B). Although murder and assault are types of racketeering activity, *see* 18 U.S.C. § 1961(1), a civil RICO claim must be based on economic, not personal, injuries. *See Bascuñán v. Elsaca*, 874 F.3d 806, 817 (2d Cir. 2017) ("All civil RICO injuries are, by the terms of the statute itself, economic losses of one kind or another. A plaintiff bringing a civil RICO claim must allege an

injury to his business or property; he cannot, for example, recover for personal injuries." (quotation marks omitted)).

Here, the Smith XII and Smith XIII Complaints do not allege that Defendants committed any of the predicate acts required to state a plausible civil RICO claim. Rather, the Complaints purport to challenge the fact of Smith's detention and the conditions of his confinement, such as his placement in solitary confinement and the adequacy of his medical care. (*See* ECF No. 1 in each case.) However, these "acts" do not fall within the statutory definition of a "racketeering activity," which requires that the act be indictable under an enumerated section of the United States Code or involve "murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance . . . which is chargeable under State law . . . ." *See generally*, 18 U.S.C. § 1961. A prison administrator's decision regarding an inmate's housing placement and/or the provision of medical care, or even a lack thereof, is a far cry from any potential "racketeering activity."

Moreover, because Plaintiff fails to allege that Defendants have engaged in a pattern of racketeering activity, Plaintiff's RICO claims must be dismissed. Without any facts to suggest that any Defendants were involved in racketeering activity, let alone a pattern of such activity, the Complaints fail to plausibly allege a violation of Section 1962. Nor do the Complaints plausibly allege injury to Smith's business or property as required to plead a plausible civil RICO claim. Rather, they seek instead to recover for Smith's claimed personal injuries. (*See* ECF No. 1 in each case.)

Accordingly, the Complaints fail to state a plausible RICO claim and are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1). *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) (affirming *sua sponte* dismissal of frivolous pro se complaint that "falls well short of

stating a valid claim because it is devoid of any factual allegations supporting appellant's claims of a criminal conspiracy. . . . The complaint's conclusory, vague, and general allegations of a criminal conspiracy do not therefore suffice to establish that the defendants participated in a 'pattern of racketeering activity' as prohibited by RICO, 18 U.S.C. § 1962."); *Fisher v. Scheinkman*, No. 21-cv-7784, 2021 WL 5401656, at *4 (S.D.N.Y. Nov. 16, 2021) (dismissing RICO claim because plaintiff failed to allege specific facts suggesting that defendants committed, or conspired to commit, racketeering activity that injured him); *see also* 28 U.S.C. § 1915A(b)(1) (providing that a district court "shall" dismiss a complaint when it is "frivolous, malicious, or fails to state a claim upon which relief may be granted").

## III. Personal Involvement and Supervisory Liability

Affording the pro se Complaints a liberal construction, even if the Court were to construe them as alleging claims pursuant to Section 1983, the allegations are insufficient to support plausible claims. The Second Circuit has made clear, in order "[t]o hold a state official liable under [Section 1983], a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020). As is readily apparent, the Complaints do not allege any conduct or inaction attributable to any particular defendant and it appears that many of the defendants (such as Governor Hochul, NYS AG James, Sheriff Toulon, Warden Franchi, Suffolk County Police Commissioner Catalina, NYSDOCCS Commissioner Martuscello, Suffolk County Executive Romaine, DA Tierney, CNYPC Director Dill, Pilgrim State Director Hamilton, Director Belfri, and NYS OMH Commissioner Sullivan) are named simply because of the supervisory positions they hold. Indeed, there are no facts in either of the Complaints linking any conduct or inaction by any of

these individuals to any claimed deprivation of some constitutional right. "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-cv-7263, 2008 WL 857528, *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)). Thus, any Section 1983 claims that may be reasonably construed from the Complaints as against any supervisor or official fail to state a claim and are thus dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii), 1915A(b)(1). *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (holding that a plaintiff proceeding under Section 1983 must allege facts showing the defendants' personal involvement in the alleged constitutional deprivation).

## IV. Municipal Liability

Similarly, although both Complaints name Suffolk County[5] as a defendant, neither alleges a plausible claim for municipal liability. In order to prevail on a Section 1983 claim against a municipal entity, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an

[5] Insofar as the Complaints name the SCCF, SCCF Yaphank, SCCF Riverhead, SCSO and the SCPD, these entities are administrative arms of the municipality, Suffolk County, and lack an independent identity to sue or be sued. *See Harris v. Med. Unit, Yamphank*, No. 2:23-cv-6839, 2024 WL 1934448, at *1 (E.D.N.Y. May 2, 2024), *appeal dismissed sub nom. Harris v. Suffolk Cnty. Corr. Facility*, No. 24-1380, 2024 WL 5699836 (2d Cir. Dec. 6, 2024) ("The SCCF, the YCF, and the YMU, as administrative arms of the municipality, Suffolk County, are without independent legal identities and cannot be sued."); *Sturgis v. Suffolk County Jail*, No. 12-cv-5263, 2013 WL 245052, *2 (E.D.N.Y. Jan. 22, 2013) (*sua sponte* dismissing Section 1983 claims against the SCCF, among others, because it is an "administrative arm[] of the County of Suffolk [and] lack[s] the capacity to be sued"); *see also Carthew v. County of Suffolk*, 709 F. Supp. 2d 188, 195 (E.D.N.Y. 2010) (dismissing Section 1983 claims against SCPD on the same basis); *Davis v. Riverhead Correction Facility*, No. 11-cv-5667, 2011 WL 6131791, at * 2 (E.D.N.Y. Dec. 6, 2011) (same regarding SCCF Riverhead). Thus, the claims against the SCCF, SCCF Yaphank, SCCF Riverhead, SCSO, and the SCPD fail to state a claim for relief and are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii), 1915A(b)(1).

official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690–91 (1978)). Thus, "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). "The Supreme Court has made clear that 'a municipality cannot be made liable' under § 1983 for acts of its employees 'by application of the doctrine of *respondeat superior*.'" *Roe*, 542 F.3d at 36 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986)).

Here, the Complaints do not allege any facts from which this Court could reasonably construe that the challenged conduct was undertaken pursuant to a municipal custom, policy or practice. Thus, these claims are implausible, and are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii), 1915A(b)(1).

### V. Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. "The reach of the Eleventh Amendment has been interpreted to extend beyond the terms of its text to bar suits in federal courts against states, by their own citizens or by foreign sovereigns." *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (quotation marks and alterations omitted). "[T]he Eleventh Amendment bars the award of money damages against state officials in their official capacities." *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 392 (2d Cir. 2022); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against

the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (citation omitted)).

It is well-established that this immunity extends to alter egos of the State including SBUH, the NYSDOCCS and its Commissioner Martuscello, NYS OMH and its Commissioner Sullivan, Governor Hochul, Pilgrim State and its Director Hamilton, NYS AG James, CNYPC and its Director Dill, NYS CC, the NYS UCS, Judge Pilewski, NYS CCCPCRC, SCDAO, DA Tierney, Kirby FPC and its Director Belfri. *See, e.g.*, *Tripathy v. McKoy*, 103 F.4th 106, 116 (2d Cir. 2024), *cert. denied*, No. 24-229, 2026 WL 1871310 (U.S. June 30, 2026) (the "request for damages against Defendants in their official capacities is barred by the Eleventh Amendment" (citing *Davis v. New York*, 316 F.3d 93, 101–02 (2d Cir. 2002)); *Gasparik v. Stony Brook Univ.*, 296 F. App'x 151 (2d Cir. 2008) (summary order) (affirming dismissal of Section 1983 claims against the SUNY Stony Brook Hospital as barred by the Eleventh Amendment); *Darcy v. Lippman*, 356 F. App'x 434, 436–37 (2d Cir. 2009) (summary order) (holding that the Eleventh Amendment bars "claim[s] for damages against the individual defendants in their official capacities" as state officials); *Tsabbar v. Booth*, 115 F. App'x 513, 514 (2d Cir. 2004) (summary order) ("[C]laims against the New York State Defendants, challenging the conduct of New York State judges, are barred by either the Eleventh Amendment to the United States Constitution or the doctrine of judicial immunity, or both.").

Accordingly, courts within this Circuit routinely dismiss claims against defendants to whom Eleventh Amendment immunity applies—including many of the same exact defendants named this action. *See, e.g.*, *Douglas v. Rosado*, No. 2:25-cv-6529, 2026 WL 1455095, at *6 (E.D.N.Y. May 22, 2026) (dismissing claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) against Commissioner Martuscello and DA Tierney as barred by the Eleventh Amendment); *DeFreitas v. Toulon*, No. 2:23-cv-5933, 2024 WL 308250, at *7 (E.D.N.Y. Jan. 26, 2024)

(finding claims against Governor Hochul and Commissioner of NYS CCCPCRC in their official capacity "are barred by the Eleventh Amendment as departments or agencies of New York State or as entities properly considered arms of the state"); *Dean v. Annucci*, No. 9:22-cv-0746, 2023 WL 2325074, at *5 (N.D.N.Y. Mar. 2, 2023) (dismissing claims pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) "insofar as plaintiff seeks monetary damages under Section 1983 against DOCCS or any other defendant in his or her official capacity"); *Barton v. Clark*, No. 23-cv-5827, 2023 WL 6929178, at *5 (S.D.N.Y. Oct. 19, 2023) ("Eleventh Amendment also precludes the claims under [Section 1983] for damages against New York State Attorney General Letitia James, who is a New York State official, in her official capacity."); *Smalls v. Kirby Psychiatric Ctr.*, No. 25-cv-775, 2025 WL 2410610, at *3 (S.D.N.Y. Aug. 19, 2025) ("Psychiatric centers operated by [NYS OMH] are state agencies that are immune from suit under the Eleventh Amendment."); *Al-Haj v. OMH State of N.Y.*, No. 18-cv-5505, 2019 WL 6831391, at *2 (S.D.N.Y. Aug. 5, 2019) ("Kirby [FPC] is an agency of the State of New York, and its employees are 'state officials' for purposes of the Eleventh Amendment.") (citation omitted), *report and recommendation adopted sub nom.*, *Al-Haj v. Weisner*, No. 18-cv-5505, 2019 WL 4051478 (S.D.N.Y. Aug. 28, 2019).

Here, Smith's claims against New York and its agencies and Smith's damages claims against the New York State officials sued in their official capacities are barred by the Eleventh Amendment. Thus, Smith's claims against these defendants are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(iii); 1915A(b)(1)–(2). *See Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (*per curiam*) ("A complaint will be dismissed as frivolous when it is clear that the defendants are immune from suit.") (quotation marks omitted).

## VI. State Law Claims

Under 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over

all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, courts "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Here, because the Complaints contain no plausible federal claim over which this Court would have original jurisdiction, the Court declines to exercise supplemental jurisdiction over any potential state law claims that may be construed in the Complaints.

**VII. Leave to Amend the Complaints**

Although "[a] court should freely give leave when justice so requires, [ ] it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90–91 (2d Cir. 2023) (affirming denial of leave to amend) (quotation marks omitted). When a pro se complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). An opportunity to amend is not required where, as here, "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it." *Id.* Thus, where "granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

In Smith XII and Smith XIII, amendment of the RICO claims set forth in the Complaints would be futile because there is no allegation that Defendants engaged in any acts of racketeering or other acts enumerated as unlawful under the statute. *See Commer v. Am. Fed'n of State, Cnty., Mun. Emps.*, 96 F. App'x 757, 758 (2d Cir. 2004) (summary order) (affirming the

denial of pro se plaintiff's leave to amend RICO claim because he did not allege that the defendant engaged in any acts of racketeering under the statute). Given Smith's thirteen other pending cases, many of which repeat the allegations in the Complaints in Smith XII and Smith XIII and are brought against largely the same defendants, the Court finds that denying leave to amend the Complaints is in the interests of justice. Indeed, "[e]very paper filed with the . . . Court, no matter how repetitive or frivolous, requires some portion of the institution's limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interest of justice." *In re McDonald*, 489 U.S. 180, 185 (1989) (*per curiam*).

## CONCLUSION

For the reasons stated above, the Court grants Smith's IFP applications (Smith XII, IFP App., ECF No. 2; Smith XIII, ECF No. 2.) Additionally, for the reasons stated above, this Court dismisses the Complaints in Smith XII and Smith XIII pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) as follows: (1) the claims against NYS, SBUH, the NYSDOCCS and its Commissioner Martuscello, NYS OMH and its Commissioner Sullivan, Governor Hochul, Pilgrim State and its Director Hamilton, NYS AG James, CNYPC and its Director Dill, NYS CC, the NYS UCS, Judge Pilewski, NYS CCCPCRC, SCDAO, DA Tierney, Kirby FPC and its Director Belfri are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(iii), 1915A(b)(1)–(2); and (2) all other federal claims are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii), 1915A(b)(1). The Clerk of the Court shall enter judgment accordingly. The Clerk of the Court shall mail a copy of this Order to Smith at his address of record, include the notation "Legal Mail" on the envelope, and note such mailing on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Dated: Central Islip, New York
September 11, 2026

*/s/ Nusrat J. Choudhury*
NUSRAT J. CHOUDHURY
United States District Judge